**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WESLEY WOODS,

Plaintiff,

- v -

Civ. No. 9:14-CV-0996
(TJM/DJS)

SUPERINTENDENT MILLER, *Great Meadow*
*Correctional Facility*; CORRECTIONAL OFFICER
FULLER, *Great Meadow Correctional Facility*;
CORRECTIONAL OFFICER WARRINGTON,
*Great Meadow Correctional Facility*,

Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

WESLEY WOODS
Plaintiff, *Pro Se*
08-B-2514
Sullivan Correctional Facility
Box 116
Fallsburg, New York 12733

HON. ERIC T. SCHNEIDERMAN          RYAN W. HICKEY, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

*Pro se* Plaintiff Wesley Woods brings this civil rights action, pursuant to 42 U.S.C.

§ 1983, alleging that the Defendants violated his Constitutional rights while he was

incarcerated at Great Meadow Correctional Facility. Dkt. No. 1, Compl. Currently pending

before the Court is Defendants' Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 26. By Letter, Plaintiff advises the Court and opposing Counsel that he does not intend to respond to the Motion. Dkt. No. 28. For the reasons that follow, it is recommended that the Motion be **denied**.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus.,*

*Inc. v. Sum Holding L.P.*, 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id.*

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must

provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, I consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Plaintiff's Complaint

In accordance with the applicable standard of review, the following facts adduced from the Complaint are taken as true.

On or about February 20, 2014, Plaintiff asked Defendants Warrington and Fuller to provide him with boots for his feet so that he could receive his one hour of recreation outside. Compl. at ¶ 6(1). Defendants told Plaintiff he would not get boots and had to wear his shoes, which Plaintiff states were "paper thin and . . . not made for winters." *Id.* Because he was deprived of the boots, Plaintiff had to "endure cold, ice, snow, water to his feet[.]" *Id.*

Plaintiff received an Interdepartmental Communication, dated February 26, 2014, from the Inmate Grievance Review Committee ("IGRC") notifying him that his inmate grievance regarding his request to have winter boots was being investigated.[1] *Id*., Ex. A. But Plaintiff did not receive any resolution on this grievance. *Id*. at ¶ 4(b). From February through April, Defendants Warrington and Fuller would laugh at Plaintiff when they saw him suffering from the pain he felt from frostbite as a result of being forced to traverse through "big puddles of ice water" in his shoes. *Id*. at ¶ 6(2). Defendants Warrington and Fuller told Plaintiff that he because he wrote grievances about them, they would make sure "his foot falls off." *Id*. at ¶ 6(3). On April 4, 2014, Plaintiff wrote a letter to Superintendent Miller regarding his request for boots that had been ignored. *Id*., Ex. B. Therein, Plaintiff informed Defendant Miller that he has been treated terribly by staff and endured mental and physical pain. *Id*. Plaintiff stated that he had to stand in below zero degree temperature in "paper thin shoes," while boots that were available in the unit were not being provided to him. *Id*. Plaintiff also informed Defendant Miller that he had not received any response to his grievance, which the IGRC acknowledged receiving. *Id*. Plaintiff has suffered permanent arthritis and nerve damage to his feet and, because he slipped and fell on the ice, he endured lower back injuries. *Id*. at ¶ 6(5).

## B. Eighth Amendment Conditions of Confinement

Liberally construing the Complaint, it appears to the Court that Plaintiff is challenging

---

[1] Plaintiff does not state when he submitted a grievance regarding his request for boots.

the conditions of his confinement as violative of the Eighth Amendment proscription of cruel and unusual punishment. Specifically, Plaintiff accuse Defendants Warrington and Fuller of violating his Eighth Amendment rights when they deprived him of winter boots when he went outside for his one-hour recreation time.

While the Eighth Amendment "does not mandate comfortable prisons," prisoners may not be denied "the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 & 349 (1981). Thus, in order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002), the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling* [*v. McKinney*], 509 U.S. [25,] 32 [(1993)] (citation and internal quotation marks omitted). Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id*. at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id*. at 35-36; *Rhodes*, 452 U.S. 337 at 347.
>
> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

*Phelps v. Kapnolas*, 308 F.3d at 185-86.

In the case at bar, we are not simply faced with a failure to provide adequate clothing coupled with exposure to cold temperature. Here we have the added facts that for months, Plaintiff's feet were exposed to below zero temperature, ice, and icy water such that he experienced frostbite and pain. In this regard, we are guided by the Second Circuit's holding that <u>prolonged</u> exposure to cold conditions amounts to an Eighth Amendment violation. *See Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (prolonged exposure to cold can constitute an Eighth Amendment violation); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir.1988) (prisoner's claim that he had been deliberately exposed to bitter cold in his cell for three months may assert Eighth Amendment violation); *Wright v. McMann,* 387 F.2d 519 (2d Cir.1967) (allegations that prisoner was denuded and exposed to bitter cold in solitary confinement cell for eleven days, that he was deprived of basic elements of hygiene such as soap and toilet paper, and that cell was filthy, without adequate heat, and virtually barren would, if established, constitute cruel and unusual punishment in violation of the Eighth Amendment); *see also Trammell v. Keane*, 338 F.3d 155, 164 (2d Cir. 2003). Objectively then, the elements that Plaintiff was exposed to over a prolonged period of time posed an "unreasonable risk of serious damage to his future health" and indeed, did cause permanent damage. *Id*. at 185 (quoting *Helling v. McKinney*, 509 U.S. at 32). And, subjectively,

Plaintiff has adequately pled that Defendants Warrington and Fuller were aware of the risk to Plaintiff's health but instead of showing concern or helping him, they laughed at him and threatened him. From such actions the Court can infer, for purposes of the present Motion, that the Defendants acted with a culpable state of mind. Thus, we recommend denying Defendants' Motion to Dismiss the Eighth Amendment conditions of confinement claim.

## B. First Amendment Retaliation

Plaintiff asserts that in retaliation for writing a grievance, Defendants Warrington and Fuller threatened him and refused to provide him with footwear suitable for winter weather.

Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *See id.* at 81-83. Because of the relative ease with which claims of retaliation can be incanted, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds, Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to state a *prima facie* claim under section 1983 for unlawful retaliation, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct or speech at issue was protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison official's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492).

Plaintiff asserts that he wrote a grievance regarding his request to be provided with boots for use during outside recreation time. A copy of that grievance was not provided to the Court. However, attached to the Complaint is an interdepartmental communication, dated February 26, 2014, from the IRGC, acknowledging receipt of his grievance. Then, at some point during the three-month time period at issue in the Complaint, Defendants Warrington and Fuller informed Plaintiff that because he had written a grievance about their failure to give him boots, they would make sure that his foot fell off. In liberally construing the factual allegations in the Complaint, the Court finds that Plaintiff has adequately pled that he engaged in protected activity, namely the grievance he filed, that the Defendants not only threatened him as a result of this grievance, but they also denied him boots while mocking the pain he endured, both of which may constitute adverse action, and, based upon the statements made to him, there appears to be a causal connection between the actions taken by Defendants and Plaintiff's protected conduct. Thus, for purposes of the present Motion,

I find that Plaintiff has adequately stated a cause of action for retaliation and therefore Defendants' Motion to Dismiss should be **denied**.

## C.  Superintendent Miller

By their Motion, Defendants seek dismissal of Superintendent Miller based upon the theory that there are no allegations that he was personally involved in any wrongdoing.  Dkt. No. 26-1, Defs.' Mem. of Law, at pp. 2-4.

In this Circuit it has historically been generally accepted that culpability on the part of a supervisory official for a civil rights violation can only be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation, such as through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  More recently, however, the issue of supervisory liability for civil rights violation has been addressed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  In that case, the Court made it clear that a governmental official, regardless of title, is accountable only for his or her conduct in such a setting, and that as such the term "supervisory liability" is a misnomer.  *See Ashcroft v. Iqbal*, 556 U.S. at 676.

The Second Circuit has yet to address the impact of *Iqbal* upon the categories of supervisory liability under *Colon*.  *See Grullon v. City of NewHaven*, 720 F.3d 133 (2d Cir.

2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, and specifically whether *Iqbal* effectively calls into question certain prongs of the Colon five-part test for supervisory liability. *See Sash v. United States*, 674 F. Supp.2d 531,543 (S.D.N.Y. 2009). While some courts have taken the position that only the first and third of the five Colon categories remain viable and can support a finding of supervisory liability, see, e.g., *Bellamy v. Mount Vernon Hosp.*, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), others disagree and conclude that whether any of the five categories apply in any particular case depends upon the particular violations alleged and the supervisor's participatory role, see, e.g., *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010).

The fact that Plaintiff may have written a letter does not automatically render the supervisory official responsible for any constitutional violation. *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (citations omitted) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (citations omitted) (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care). Prison supervisors cannot be deemed personally involved based simply on a response to a complaint. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). However, we are also guided by the

Second Circuit's decision in *Grullon v. City of New Haven*, wherein the Circuit instructed that, absent factual allegations to the contrary, where a Plaintiff alleges that he sent a letter of complaint to the Warden, or for our purposes to the Superintendent, the district court should draw the reasonable inference that the Superintendent "received the Letter, read it, and thereby became aware of the alleged conditions of which [Plaintiff] complained." 720 F.3d 133, 141 (2d Cir. 2013). At this stage in the litigation, I am bound by the factual allegations in the Complaint, which I take as true, and thus I must find that Plaintiff has adequately pled the Superintendent's personal involvement to the extent that he was aware of the unconstitutional conditions and treatment Plaintiff was exposed to and ignored the situation. Thus, I recommend **denying** Defendants' Motion to Dismiss.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 26) be **denied**; and it is further

**RECOMMENDED**, that if the above recommendation is accepted, Defendants should be directed to respond to the Complaint in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the

Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   February 11, 2016
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge