**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WESLEY WOODS,

                              Plaintiff,

        - v -                                            Civ. No. 9:14-CV-0996
                                                         (TJM/DJS)

SUPERINTENDENT MILLER, *et al.*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

WESLEY WOODS
Plaintiff, *Pro Se*
08-B-2514
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN                     RYAN W. HICKEY, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        On July 12, 2014, *pro se* Plaintiff Wesley Woods commenced this civil rights action,

pursuant to 42 U.S.C. § 1983, asserting claims arising from his incarceration at Great Meadow

Correctional Facility ("Great Meadow") in the custody of the Department of Corrections and

Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Specifically, the Complaint asserts the

following claims: (1) an Eighth Amendment conditions of confinement claim against Defendants

Miller, Fuller, and Warrington; and (2) a First Amendment retaliation claim against Defendants

Fuller and Warrington. *Id.* Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 48, Defs.' Mot. Summ. J. Plaintiff has filed a Response, Dkt. Nos. 53 & 55, and Defendants have filed a Reply, Dkt. No. 54. For the reasons that follow, the Court recommends that Defendants Motion be **granted**.

## I. BACKGROUND

The relevant events of this action occurred when Plaintiff was incarcerated at Great Meadow in the Behavioral Health Unit ("BHU"). Dkt. No. 48-1, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF") at ¶ 2.[1] The BHU is a treatment program for inmates "who have been in [the Special Housing Unit] SHU for a long period of time." *Id.* at ¶ 3.

Inmates housed in the BHU are permitted one hour of outdoor recreation time per day. *Id.* at ¶ 5. Inmates, however, are not required to participate in the outdoor recreation time. Dkt. No. 48-5, Decl. of Ryan Hickey, dated Jan. 31, 2017, Dep. of Wesley Woods, dated Sept. 22, 2016 ("Pl.'s Dep.") at pp. 16-17. Outdoor recreation occurs after the inmates have finished their dinner. Defs.' SMF at ¶ 7. In order to receive recreation time, an inmate must notify the corrections officer who collects their dinner trays. *Id.* at ¶ 8. That officer makes a list of each inmate who wishes to receive recreation time. Pl.'s Dep. at pp. 16-17.

An inmate may also make a request for a jacket and boots to the officer collecting dinner

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). Although Plaintiff has filed a response to Defendants' Statement of Material Facts, it is not consistent with Local Rule 7.1(a)(3). *See* Dkt. No. 55. The Court will cite to the facts as set forth in Defendants' Statement of Material Facts when properly supported by the record. *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

trays and the officer will record the request on the list of inmates who are requesting recreation time. *Id.* at pp. 20 & 22. Depending on the weather, the jacket and boots are then distributed right before the inmates pass outside. *Id.* at p. 23. The officer who distributes the jackets and boots follows the list made by the officer who collected the dinner trays. *Id.*

The boots are "galosh" style boots which are worn over the top of the inmate's state-issued shoes. Defs.' SMF at ¶ 9. The boots are insulated and come up to the knees. Pl.'s Dep. at p. 39. Under BHU policy, inmates may only receive boots in the event of "extreme cold" or "inclement weather." Dkt. No. 48-9, Decl. of Jeffery Hale, dated Jan. 23, 2017, Ex. B at p. 43.[2] "Cold weather is defined as 20 degrees Fahrenheit or less and inclement weather is defined as heavy fog or driving sleet, snow or rain." *Id.* When either of these conditions is met, all inmates requesting boots will receive them. Defs.' SMF at ¶ 23. On the other hand, if the weather is neither cold nor inclement, no inmate will receive boots. *Id.*

The basis of Plaintiff's Complaint is that from February 20, 2014 until April 6, 2014, Defendants Fuller and Warrington denied him access to boots when there was ice, snow, and extreme cold. Compl. at ¶¶ 1-2. According to Plaintiff, during that period, he went outside for recreation every day, and he requested boots on twenty-four to twenty-five of those days. Pl.'s Dep. at pp. 26-27. He claims that he only received boots on two days during that period, *id.* at p. 27, although it snowed at least five times, and there was snow on the ground of the recreation cages most days, *id.* at p. 36.

Plaintiff claims that Defendants Fuller and Warrington were on duty throughout this period and saw to it that he was not marked down on the list to receive boots. *Id.* at pp. 28-29 & 32.

---

[2] Citations are to the pagination assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

Plaintiff states that, on February 20, 2014, he requested boots when Fuller came around to collect his dinner tray. *Id.* at p. 23. Later, as he was being escorted outside, he asked Warrington for boots, but Warrington said he was not on the list and therefore denied him boots. *Id.* at pp. 24-25.

The next day, February 21, Plaintiff filed a grievance about being denied boots. *Id.* at p. 29. On February 22, Plaintiff claims that both Fuller and Warrington made comments to him about the grievance. *Id.* at pp. 31-32. The Defendants allegedly said that they would see that he did not receive boots when they were on duty, and that they would "make sure [his] feet fall off." *Id.* at p. 32. Plaintiff estimates that during the period from February 20 through April 6, he made twelve to sixteen requests to Fuller for boots, and eight to twelve requests to Warrington; Plaintiff did not receive boots on any of those occasions. *Id.* at pp. 29 & 32.

The Defendants generally deny Plaintiff's account. Defendant Fuller states that during the period in question he was assigned to supervise the inmates in the outdoor recreation area and therefore would not have been present when the boots were being distributed. Dkt. No. 48-12, Decl. of Jesse Fuller, dated Jan. 25, 2017, at ¶ 16. Defendant Warrington asserts that he left his position at Great Meadow on March 17, 2014. Dkt. No. 48-11, Decl. of Eric Warrington, dated Jan. 25, 2017, at ¶ 6. Both Defendants deny any awareness of Plaintiff's grievance, and assert that they did not at any intentionally deny Plaintiff's request for boots or in any way retaliate against or harass Plaintiff. Fuller Decl. at ¶¶ 20 & 22; Warrington Decl. at ¶¶ 22 & 24. The Defendants also assert that the recreation pens are regularly shoveled during the winter. Defs.' SMF at ¶ 24.

Plaintiff claims that he suffered "permanent arthrites [*sic*] and nerve damage to his feet," as well as lower back injuries that he suffered when he slipped and fell due to his foot pain. Compl. at ¶ 5. Plaintiff claims that he was diagnosed with frostbite in June or July 2014, Pl.'s Dep. at p. 51,

however, there is no documentation of that diagnosis in his medical records, *see* Dkt. No. 49, Hickey Decl., Ex. C ("Pl.'s AHR") at p. 50. As to Plaintiff's back pain, Plaintiff claims that he began experiencing serious pain in June 2014. *See* Pl.'s Dep. at p. 46. An x-ray taken of Plaintiff's lumbar spine on July 11, 2014, showed "no evidence fracture, malignment or degenerative change." Pl.'s AHR at p. 91.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendants move for summary judgment on the grounds that: (1) Plaintiff failed to exhaust

his administrative remedies; (2) Defendant Miller was not personally involved in any of alleged constitutional violations; (3) Plaintiff is unable to establish either an Eighth Amendment conditions of confinement claim or a First Amendment retaliation claim; and (4) Defendants are entitled to qualified immunity.  Dkt. No. 48-2, Defs.' Mem. of Law.

## A.  Eighth Amendment Conditions of Confinement Claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Among the guarantees of the Eighth Amendment is that prison officials must "provide humane conditions of confinement . . . [and] must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Nonetheless, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  In order to establish a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must show that (1) objectively, the deprivation was sufficiently serious that it constituted a denial of the "minimal civilized measure of life's necessities," and (2) subjectively, the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).  At the objective prong, "a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps v. Kapnolas*, As to the subjective prong, a plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835.

Defendants argue that Plaintiff is unable to establish either that the deprivation of boots was

objectively serious, or that Defendants Fuller and Warrington acted with a culpable state of mind. Defs.' Mem. of Law at pp. 15-19.

The Second Circuit has held that "an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *see also Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967). In cases where an inmate was not subjected to "bitter cold" for a "prolonged period," however, the Second Circuit has held that an Eighth Amendment claim is not properly established. *See Trammell v. Keane*, 338 F.3d 155, 164-65 (2d Cir. 2003). Among the factors a court must consider in determining whether an Eighth Amendment claim is made out is "the length of exposure and temperatures experienced." *Taylor v. Halladay*, 2010 WL 3120036, at *7 (N.D.N.Y. July 1, 2010) (citing *Gaston v. Coughlin*, 249 F.3d at 164-65). Notably, numerous district courts in the Second Circuit have granted summary judgment on Eighth Amendment claims based on the provision of inadequate clothing during outdoor recreation. *See Holmes v. Fischer*, 2016 WL 552962, at *16-17 (W.D.N.Y. Feb. 10, 2016); *Dabney v. Sawyer*, 2013 WL 5494074, at *12-13 (N.D.N.Y. Sept. 30, 2013); *Walker v. Fischer*, 2011 WL 4369116, at *13 (N.D.N.Y. July 25, 2011); *Koehl v. Bernstein*, 2011 WL 2436817, at *18-19 (S.D.N.Y. June 17, 2011); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 357-58 (N.D.N.Y. 2010).

In this case, the record is insufficient to establish that Defendants violated contemporary standards of decency in denying Plaintiff boots during outdoor recreation. In the first place, Plaintiff's allegations are simply too vague to survive summary judgment. As Defendants point out, the only date Plaintiff is able to identify on which he requested and was denied boots is February 20, 2014. Aside from this date, Plaintiff estimates that he requested boots from Defendant Fuller

on twelve to sixteen occasions and from Defendant Warrington on eight to twelve occasions, but he is unable to specify the date of any of those requests. Plaintiff's allegations also lack any detail as to the weather conditions during the relevant time period, which is significant to whether the Defendants were acting according to BHU policy in denying Plaintiff boots. Under BHU policy, inmates may only receive boots in the event of "extreme cold" or "inclement weather." Plaintiff admits that during the relevant period it only snowed during recreation time approximately five times, but stated that he would request boots every time he went out for recreation. Pl.'s Dep. at p. 34. He adds that on the dates that he was denied boots, every other inmate was also denied boots. *Id.* at p. 39. These concessions at least suggest that, on some occasions, the Defendants were merely following BHU policy in denying Plaintiff's requests. Overall, the uncertainty of Plaintiff's allegations is insufficient to survive a motion for summary judgment.

Furthermore, even if the Court were to assume that the Defendants improperly denied Plaintiff boots on approximately a dozen occasions each, it would still find that Plaintiff had failed to establish the objective prong of the Eighth Amendment. Viewing Plaintiff's assertions in the most generous light, each Defendant caused Plaintiff to have inadequate footwear for hour-long recreation on approximately a dozen occasions. This is insufficient to establish that either Defendant caused Plaintiff to be exposed to bitter cold for a "prolonged" period of time. The cases where the Second Circuit recognized Eighth Amendment claims based upon exposure to cold involved much lengthier periods of exposure where inmates were confined in cells with open windows. *See Gaston v. Coughlin*, 249 F.3d at 165 (finding that inmate was exposed to "temperatures near or well below freezing for a five-month period" where windows in cell block were broken); *Corselli v. Coughlin*, 842 F.2d at 27 (inmate was exposed to "bitterly cold

temperatures for approximately three months . . . when the large window frames in his cell block were empty"); *Wright v. McMann*, 387 F.2d at 521-22 (inmate was kept in "strip" solitary confinement cell for periods of thirty-three and twenty days, without clothing other than underwear, and where the windows were opened to "subfreezing" temperatures at night). Furthermore, unlike the inmates in those cases, Plaintiff's exposure to the cold was not involuntary. *See Holmes v. Fischer*, 2016 WL 552962, at *17; *Dabney v. Sawyer*, 2013 WL 5494074, at *13; *Koehl v. Bernstein*, 2011 WL 2436817, at *18.[3]

In addition to the above, Plaintiff's assertions that he suffered frostbite on his feet and lower back injuries due to not receiving boots during recreation are belied by his medical records. As to Plaintiff's claim that he sustained frostbite on his feet, his medical records fail to document this claim. *See* Pl.'s AHR at pp. 50 & 67; *see also id.* at pp. 13-16. Similarly, while Plaintiff claims that he suffered lower back pain when he slipped and fell several times, Pl.'s Dep. at pp. 45-46, he admits that this back pain did not begin until June 2014, several months after he allegedly slipped and fell, *see* Pl.'s Dep. at p. 46. Furthermore, an X-ray taken on July 11, 2014 revealed "no evidence fracture, malignment or degenerative change in lumbar spine." Pl.'s AHR at p. 91.

Plaintiff is therefore unable to establish the objective prong of his conditions of confinement claim. Accordingly, the Court recommends that summary judgment be **granted** on this claim.[4]

---

[3] The Court notes that while an inmate must receive "some out-of-cell exercise" under the Eighth Amendment, *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996), district courts have held that deprivations of exercise for a period of several weeks is *de minimis* and does not constitute a constitutional violation. *See Phelan v. Zenzen*, 2012 WL 5420423, at *5 (W.D.N.Y. Nov. 6, 2012) (collecting cases).

[4] Having found that Plaintiff fails to establish an Eighth Amendment claim, it follows that to the extent Plaintiff states a supervisory claim against Defendant Miller, the Court also recommends that that claim be dismissed. *See Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 720 (W.D.N.Y. 2015) ("Absent an underlying constitutional violation, there can be no supervisory liability."). The Court therefore does not address the Defendants' argument as to Defendant Miller's personal involvement in the alleged constitutional violations.

## B. First Amendment Retaliation Claim

"[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or she was engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d at 491("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson*, 89 F.3d at 79.

Plaintiff states retaliation claims against Defendants Fuller and Warrington on the ground that the day after he filed a grievance regarding boots each of the Defendants mentioned the grievance to him and stated that they would prevent him from receiving boots. Pl.'s Dep. at pp. 31-32. Defendants argue that Plaintiff's retaliation claims fail because (1) he has not established that Defendants subjected him to any adverse action; (2) he has not established a causal connection between his grievance and the Defendants' conduct; and (3) BHU policy sets forth when inmates

may receive boots. Defs.' Mem. of Law at pp. 21-22.

The Court agrees with Defendants that Plaintiff's retaliation claims are insufficient to survive summary judgment for the same reasons it found Plaintiff's conditions of confinement claim insufficient. Specifically, Plaintiff's vague allegations are insufficient to establish that Defendants took adverse action against him. "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Here, Plaintiff has been unable to specify (1) the dates on which the Defendants allegedly denied him boots; and (2) whether he was improperly denied boots on those dates under BHU policy. Plaintiff's vague allegations regarding Defendants' alleged adverse action against him are insufficient to survive summary judgment.

Accordingly, the Court recommends that summary judgment be **granted** as to Plaintiff's retaliation claims.[5]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 48) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

---

[5] Because the Court recommends that summary judgment be granted on the merits of Plaintiff's claims, it does not reach Defendants' alternative arguments regarding Plaintiff's failure to exhaust and Defendants' entitlement to qualified immunity.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 1, 2017
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).